**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH F. PACINI,**

                               **Plaintiff,**

   vs.                                               **6:16-cv-1110**
                                                                 **(MAD/ATB)**

**VILLAGE OF NEW YORK MILLS, GUY T.**
**DANELLA,** *individually and in his official*
*capacity as a police officer of the Village of New*
*York Mills*,

                                 **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FELT, EVANS LAW FIRM**            **JAY G. WILLIAMS, III, ESQ.**
4–6 North Park Row
Clinton, New York 13323
Attorneys for Plaintiff

**BURKE, SCOLAMIERO LAW FIRM**   **KEVIN P. BURKE, ESQ.**
7 Washington Square                        **ELIJAH J. SUMMERSELL, ESQ.**
Albany, New York 12205
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On September 19, 2016, Plaintiff Joseph F. Pacini filed the amended complaint in this action alleging state and federal claims against the Village of New York Mills and police officer Guy T. Danella. *See* Dkt. No. 4. Presently before the Court are Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment. *See* Dkt. Nos. 22, 26. For the following reasons, Defendants' motion is granted and Plaintiff's motion is denied.

### II. BACKGROUND

This case arises out of a domestic dispute between Plaintiff and his ex-wife, Karen Pacini. In the summer of 2015, Plaintiff and Ms. Pacini were in the process of getting divorced and contacted the police several times due to domestic disputes. *See* Dkt. No. 33 at ¶ 4; Dkt. Nos. 12, 14, 15. On June 25, 2015—after Ms. Pacini's second complaint to the police—the Oneida County Family Court issued a temporary order of protection against Plaintiff. *See* Dkt. No. 22-13. The order of protection required Plaintiff to "[r]efrain from communication or any other contact by mail, telephone, email, voice-mail or other electronic means with Karen L. Pacini . . . except if there is a medical emergency regarding the children then [Plaintiff] may contact [Ms. Pacini] by phone. Text messaging for the purposes of discussing the general welfare of the children." *See id.* at 1. Additionally, the order of protection stated that Plaintiff must "[r]efrain from assault, stalking, harassing, aggravated harassment, menacing . . . intimidation, threats . . . or any criminal offense against [Ms. Pacini]." *See id.*

Even after the order of protection was issued, Plaintiff and Ms. Pacini continued living in the same house, along with their children. *See* Dkt. No. 33 at ¶ 5. Between June 29, 2015, and July 18, 2015, Ms. Pacini contacted the police four separate times to complain about Plaintiff and report that he was violating the order of protection. *See* Dkt. Nos. 12, 14, 15, 16.[1] On two of those occasions, Ms. Pacini filed domestic incident reports, which include additional documentation and a signed statement by Ms. Pacini. *See* Dkt. Nos. 14, 15. Until September 21, 2015, Plaintiff was not arrested as a result of any of Ms. Pacini's complaints to the police. *See* Dkt. No. 23 at ¶ 8.

---

[1] There was also one incident when Plaintiff contacted the police to complain of verbal threats made by Ms. Pacini. *See* Dkt. No. 22-8 at 38. Specifically, Plaintiff accused Ms. Pacini of threatening to throw his clothes out of the house and threatening to call the police to have him removed. *See id.*

2

On the night of September 21, 2015, the New York Mills Police Department received a dispatch from an Oneida County 911 operator regarding a domestic incident at the Pacinis' residence. *See* Dkt. No. 23 at ¶ 10. Two New York Mills Police Officers—Guy Danella and Timothy Hajec—were sent to the scene, but before they arrived they were informed that Ms. Pacini was en route to the police station, possibly being followed by Plaintiff. *See id.* at ¶ 12.[2] Officer Hajec returned to the police station, where he encountered Ms. Pacini and completed a domestic incident report, which states that Ms. Pacini accused Plaintiff of violating the order of protection through "continuous . . . harassing text messages and verbal abuse at the residence." *See* Dkt. No. 22-16 at 1. The domestic incident report indicates that Plaintiff was arrested for criminal contempt. *See id.* The report also includes a supporting deposition from Ms. Pacini that was sworn under oath. *See id.* at 2. In the deposition, Ms. Pacini states that Plaintiff continuously violated the order of protection by repeatedly coming home at night and stomping his feet, by harassing Ms. Pacini, and by threatening to lie in court. *See id.*

As Officer Hajec completed the domestic incident report, Officer Danella drove to the Pacinis' house, where he encountered Plaintiff. *See* Dkt. No. 23 at ¶ 19. Officer Danella spoke with Plaintiff on the porch, and he detected a strong odor of alcohol on Plaintiff's breath. *See* Dkt. No. 22-8 at 49, 53-54. Officer Danella then returned to the police car and called Officer Hajec, who drove to the scene with the domestic incident report. *See id.* at 59. After reviewing the order of protection, the domestic incident report, and Ms. Pacini's supporting deposition, Officer Danella arrested Plaintiff for violating the terms of the order of protection. *See* Dkt. No. 23 at ¶

---

[2] Officer Danella never confirmed that Plaintiff was actually following Ms. Pacini. *See* Dkt. No. 22-8 at 47. When Officer Danella arrived at the Pacinis' house, Plaintiff's car was parked in the driveway. *See id.* While Officer Danella noted that the hood of the vehicle was warm, he had no way of knowing if Plaintiff actually followed Ms. Pacini. *See id.* at 48.

20. Plaintiff was transported to the New York Mills Police Department and charged with criminal contempt in the first degree in violation of section 215.51(B)(IV) of the New York State Penal Code. *See id.* at ¶ 21, 25. On September 23, 2015, Ms. Pacini informed the assistant district attorney prosecuting Plaintiff's case that she no longer wished to pursue criminal charges against Plaintiff. *See id.* at ¶ 28. Eventually all charges against Plaintiff were dropped. *See id.* at ¶ 29.

On September 19, 2016, Plaintiff filed the amended complaint in this action bringing claims under 42 U.S.C. § 1983 for false arrest against Officer Danella and the Village of New York Mills. *See* Dkt. No. 4 at ¶¶ 33-39. Plaintiff also asserted several state law claims, including assault, battery, negligence, intentional infliction of emotional distress, false arrest, false imprisonment, and libel. *See id.* at ¶¶ 43-73. Defendants filed an answer and now move for summary judgment. *See* Dkt. Nos. 7, 22. Plaintiff filed a cross-motion for summary judgment, which Defendants opposed. *See* Dkt. Nos. 26, 29.

### III. DISCUSSION

**A.     Legal Standard**

*1. Summary Judgment*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

4

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment. Summary judgment may also be granted against any part of the remedy sought by the opposing party's claims. *See Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010).

### *2. Qualified Immunity*

Qualified immunity is an affirmative defense and, as such, Defendants bear the burden of proving that the privilege of qualified immunity applies. *See Coolick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 50, 60-61 (2d Cir. 2009)). The Court is mindful

that qualified immunity is "'an entitlement not to stand trial or face the other burdens of litigation,'" and that this privilege is "'effectively lost if a case is erroneously permitted to go to trial.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Courts engage in a two-part inquiry to determine whether the doctrine of qualified immunity bars a suit against government officials. *See Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). First, a court must consider whether the facts, construed in favor of the party asserting the injury, "demonstrate a violation of a constitutional right." *See id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, a court must also determine "whether the officials' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Courts may exercise their discretion in deciding which prong should be considered first. *See Pearson v. Callahan*, 555 U.S. 223, 243 (2009).

**B.    § 1983 Claims**

   *1. False Arrest*

Plaintiff asserts a claim for false arrest against Officer Danella under 42 U.S.C. § 1983. Defendants move for summary judgment on that claim, arguing that Officer Danella had probable cause to arrest Plaintiff. *See* Dkt. No. 22-2 at 5. Furthermore, Defendants argue that even if Officer Danella lacked probable cause, he is nonetheless entitled to qualified immunity. *See id.* at 9.

A warrantless arrest is "presumptively unlawful." *See Raysor v. Port Auth.*, 768 F.2d 34, 40 (2d Cir. 1985) (stating that "the plaintiff need not prove either malice or want of probable cause"); *accord Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007). However, "[t]here

6

can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).  Accordingly, the presumption that a warrantless arrest is unlawful can be rebutted by the defendant if it is established that there was probable cause for the arrest. *See Jenkins*, 478 F.3d at 88.  The existence of probable cause is a complete defense, for which the defendant bears the burden of proof. *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010).  "Probable cause is not a particularly demanding standard." *Williams v. Suffolk County*, 284 F. Supp. 3d 275, 285 (E.D.N.Y. 2018) (quoting *United States v. Scala*, 388 F. Supp. 2d 396, 401 (S.D.N.Y. 2005)).

Even if there was no "actual" probable cause, a police officer is entitled to qualified immunity if there was arguable probable cause to arrest a plaintiff in a false arrest suit. *See Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).  Because qualified immunity is an affirmative defense, the defendant bears the burden of establishing that there was arguable probable cause to make an arrest. *See Suffolk County*, 284 F. Supp. 3d at 285.

Plaintiff argues that probable cause, or even arguable probable cause, was lacking in this case.  Indeed, Plaintiff filed a cross-motion for summary judgment arguing that the Court should find as a matter of law that Officer Danella lacked probable cause to arrest Plaintiff.  Plaintiff asserts two main reasons why there was no probable cause in this case: (1) Officer Hajec indicated on the domestic incident report that there was no probable cause to arrest Plaintiff, and

7

(2) Plaintiff's conduct did not constitute harassment and, therefore, Plaintiff did not violate the order of protection.

First, the Court is not persuaded by Plaintiff's argument regarding Officer Hajec. The domestic incident form contains a section asking whether an arrest was made, as well as a follow-up section with the heading "Reasons arrest not made on-scene." *See* Dkt. No. 22-16 at 1. On the September 21 domestic incident report, Officer Hajec initially filled in the "No" bubble indicating that no arrest had been made, and the reason provided was that there was no probable cause. *See id.* However, Officer Hajec subsequently crossed out the bubble stating that no arrest was made, and filled in the "Yes" bubble to show that an arrest had been made. *See id.* He also wrote that Plaintiff was charged with criminal contempt. *See id.* At his deposition, Officer Hajec explained that he made the change when he learned that Ms. Pacini had an order of protection against Plaintiff. *See* Dkt. No. 22-9 at 16. Officer Hajec also clearly stated that he believed Plaintiff had violated the order of protection. *See id.* at 17. Although Officer Hajec did not go back and cross out the "No probable cause" explanation for why an arrest was not made, that section clearly did not apply once it was determined that an arrest would be made.

Second, Plaintiff argues that there was no probable cause to make an arrest because Plaintiff did not harass Ms. Pacini. *See* Dkt. No. 26-2 at 8-13. However, this argument also misses the mark. Plaintiff was arrested for criminal contempt in the first degree, *see* Dkt. No. 23 at ¶ 25, and "the elements of criminal contempt are twofold: (1) knowledge of an existing court order and (2) willful violation of that order," *People v. Wood*, 260 A.D.2d 102, 107 (4th Dep't 1999). While the order of protection barred Plaintiff from harassing Ms. Pacini, it also prohibited a broader range of conduct. *See* Dkt. No. 22-13. Notably, it required Plaintiff to refrain from

8

communication with Ms. Pacini unless it was for the purpose of "discussing the general welfare of the children." *See id.* at 1.

Based on the domestic incident report and Ms. Pacini's supporting deposition, Officer Danella had probable cause to arrest Plaintiff for violating the protective order. "Probable cause can exist solely based on information from an alleged victim . . . 'unless circumstances raise doubt as to the person's veracity.'" *Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 197 (E.D.N.Y. 2010) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001)). "In cases involving arrests for violating a protective order, courts in this circuit have found that the arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause." *Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 438 (S.D.N.Y. 2014) (quoting *Carthew*, 709 F. Supp. 2d at 197); *see also Coyle v. Coyle*, 354 F. Supp. 2d 207, 212 (E.D.N.Y. 2005) (holding that a complainant's accusation that her former husband had violated an order of protection was sufficient to provide probable cause for arrest in the absence of reasons to doubt her veracity).

Here, it is undisputed that both Officer Danella and Plaintiff were aware of the order of protection. The domestic incident report and supporting deposition provide sufficient reasons for Officer Danella to believe that Plaintiff violated the order of protection. The domestic incident report states that Plaintiff violated the order of protection by engaging in "continuous . . . harassing text messages and verbal abuse at the residence." *See* Dkt. No. 22-16 at 1. And the sworn supporting deposition states that Plaintiff sent a text message to Ms. Pacini saying "All bets are off." *See id.* at 2. The deposition also states that Plaintiff continuously violated the order of protection by repeatedly coming home at night and stomping his feet, by harassing Ms. Pacini, and by threatening to lie in court, both in person and via text message. *See id.* Furthermore,

Plaintiff has not provided any evidence that Officer Danella had reason to doubt the veracity of Ms. Pacini's statements. On the other hand, Officer Danella had additional information supporting the veracity of Ms. Pacini's accusations, including the fact that there were several prior domestic incidents that summer involving Plaintiff and Ms. Pacini, *see* Dkt. No. 22-8 at 40, that Officer Pacini smelled "a strong odor of alcohol" on Plaintiff's breath, *see id.* at 49, and that he was told that Plaintiff was following Ms. Pacini, *see id.* at 44.

Because the Court finds that Officer Danella had probable cause to arrest Plaintiff, Defendants motion for summary judgment is granted as to Plaintiff's false arrest claim. And even if Officer Danella lacked probable cause to arrest Plaintiff, he would nonetheless be entitled to qualified immunity. Viewing the evidence in the light most favorable to Plaintiff, it was objectively reasonable for Officer Danella to believe that probable cause existed. For the same reasons that the Court finds that Officer Danella had probable cause to arrest Plaintiff, the Court also concludes that Officer Danella had at least arguable probable cause. *See Carthew*, 709 F. Supp. 2d at 202-05.

### *2. Municipal Liability*

A municipality "may not be held liable under Section 1983 unless the challenged action was performed pursuant to a municipal policy or custom." *Powers v. Gipson*, No. 04-CV-6338, 2004 WL 2123490, *2 (W.D.N.Y. Sept. 14, 2004) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). This is because "[m]unicipalities are not subject to Section 1983 liability solely on the basis of a *respondeat superior* theory." *Id.*, at *2. As a result, to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and "(1) 'the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) 'a causal connection—an

"affirmative link"—between the policy and the deprivation of his constitutional rights.'" *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

Here, Plaintiff brings a § 1983 claim alleging that the Village of New York Mills is liable for the false arrest, which violated Plaintiff's constitutional rights. *See* Dkt. No. 1 at ¶ 33. However, the Court finds that there was no violation of Plaintiff's constitutional rights because Officer Danella had probable cause to arrest Plaintiff. Therefore, the Village of New York Mills cannot be held liable under *Monell*. *See Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (noting that a city cannot be held liable under *Monell* where the plaintiff does not establish an underlying violation of his constitutional rights).

Alternatively, the Court finds that Officer Danella is entitled to qualified immunity. If Officer Danella did not have probable cause to arrest Plaintiff but is instead entitled to qualified immunity, then it is possible for Plaintiff to establish municipal liability against the Village of New York Mills. *See Askins*, 727 F.3d at 253; *see also Adkins v. City of New York*, 143 F. Supp. 3d 134, 141 (S.D.N.Y. 2015) ("Qualified immunity of individual actors is irrelevant to *Monell* liability"). However, the Court would still grant summary judgment as to Plaintiff's municipal liability claim. Although Plaintiff asserts that the Village of New York Mills Police Department had a policy of incorrectly filling out felony complaints, he fails to show a causal connection between that supposed policy and the Plaintiff's constitutional injury.

**C.     State Law Claims**

Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809

(2d Cir. 1979) (citation omitted). The Second Circuit has held that "'if [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Castellano v. Bd. of Tr.*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)). Given that Plaintiff's remaining claims are based in state law, the Court declines to exercise supplemental jurisdiction over any such claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 22) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for summary judgment (Dkt. No. 26) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendants; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 7, 2018
     Albany, New York

*Mae A. D'Agostino*
U.S. District Judge